[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 19, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11109
Non-Argument Calendar

_____

Agency No. A079-497-336

JUAN PABLO BETANCOURT LOPEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 19, 2009)

Before CARNES, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Juan Pablo Betancourt Lopez, a Columbian citizen proceeding pro se, seeks review of the denial of his claims for asylum and withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158, 1231, and relief under the Convention Against Torture (CAT), 8 C.F.R. § 208.16(c). The Immigration Judge denied relief, and the Board of Immigration Appeals affirmed. Lopez contends that the IJ and the BIA erred in finding that he failed to demonstrate either past persecution or a well-founded fear of future persecution.[1] In particular, Lopez argues that the frequent threatening telephone calls he received from members of the Revolutionary Army Forces of Columbia ("FARC"), a leftist guerilla group in Columbia, constitute persecution. Because we find that those threats did not rise to the level of persecution, and that Lopez has not established that he would be targeted after his eight-year absence from Columbia, we deny Lopez's petition.

I.

The IJ accepted Lopez's testimony as credible. Beginning in 1990 Lopez actively participated in the National Salvation Movement, an affiliate of the Conservative Party, and he collaborated in the 1994 and 1998 campaigns to elect

---

[1] Lopez challenged the denial of his request for CAT relief before the BIA but does not challenge it before this Court. We therefore deem that claim to be abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that an appellant's failure to offer argument on an issue constitutes abandonment of that issue).

Luis Emilio Sierra Grajales to the Columbian senate. In February 2000 Lopez was appointed to the public defender's office in the municipality of Aguadas, which is located several hours from his former home in Manizales. Twice within the next two months Lopez was stopped at roadblocks set up by FARC insurgents, but on both occasions he showed false identification papers and was permitted to pass unharmed.

In November 2000 Lopez received a phone call at the public defender's office from a man who identified himself as a member of Front 47 of the FARC. The caller stated that the FARC knew where Lopez lived in Manizales, knew that he traveled the roads, and was targeting Lopez because he belonged to a "corrupt political movement" that continued to oppose FARC ideology. The caller threatened that Lopez would be killed as had been Alvero Gomez Cortal, the founder of the National Salvation Movement, who was murdered in 1995.

Lopez did not report the threat to the authorities, but as a precaution he varied his travel schedule and began using the public bus instead of his private car. Lopez received another threatening call in March 2001, this time at his home. The caller said the FARC would kill him wherever he goes because he accused the FARC of violating human rights. Lopez reported this threat to the police, who put tracing equipment on that telephone line, but threatening calls began on another phone line. Lopez decided to move into his in-law's house, but he received at least

3

five threatening phone calls there too.  In April 2001 Lopez left Columbia.  After

he departed Front 47 called again and asked about his whereabouts.  His daughters

withdrew from school, and his wife discontinued her studies.  They followed him

to the United States in July 2001.[2]

## II.

We review de novo the IJ's and BIA's legal conclusions.  Mohammed v.

Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001).  Factual findings are reviewed

under the highly deferential substantial evidence test, under which we must affirm

the decision "if it is supported by reasonable, substantial, and probative evidence

on the record considered as a whole."  Al Najjar, 257 F.3d at 1283–84 (citations

and quotation marks omitted).  We cannot reverse the IJ's and BIA's factual

findings unless the record compels it.  Adefemi v. Ashcroft, 386 F.3d 1022, 1027

(11th Cir. 2004) (en banc).

To be eligible for asylum, the applicant bears the burden of establishing

statutory "refugee" status.  See 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a).

---

[2] Both Lopez and the government appear to assume that Lopez's wife and their two daughters are also petitioners before this Court.  However, Lopez is the only petitioner because his petition for review mentions only his name.  Federal Rule of Appellate Procedure 15(a)(2)(A) requires the petition for review of an agency order to "name each party seeking review either in the caption or the body of the petition—using such terms as 'et al.,' 'petitioners,' or 'respondents' does not effectively name the parties."  Thus, it appears that we lack jurisdiction to grant the unnamed applicants (Lopez's wife and daughters) any relief.  See Miljkovic v. Ashcroft, 366 F.3d 580, 583 (7th Cir. 2004).  The omission of Lopez's wife and daughters from Lopez's petition for review does not alter our analysis, however, because his wife and daughters' claims are entirely derivative from his claims.  See id.; 8 U.S.C. § 1158(b)(3)(A).

4

"That is, the alien must, with specific and credible evidence, establish (1) past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion; or (2) a well-founded fear of future persecution on account of a statutorily-protected ground." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). In determining whether an applicant has suffered past persecution, the BIA must consider the cumulative effect of the incidents. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007). In addition to providing an independent avenue for asylum eligibility, a showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1232 (11th Cir. 2007).

An applicant who fails to demonstrate past persecution may still establish eligibility for asylum based on proof of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(2). This showing requires an applicant to prove "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (citations and quotations omitted). The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component can be fulfilled by establishing either

5

past persecution or "a good reason to fear future persecution." Al Najjar, 257 F.3d at 1289 (citation and quotation omitted).

III.

Lopez believes the FARC targeted him because he participated through the National Salvation Movement in political campaigns on behalf of local farmers, publically accused the FARC of human rights violations, and worked as a public defender. In dismissing Lopez's claims, the IJ cited Rivera v. U.S. Attorney General, 487 F.3d 815 (11th Cir. 2007), where we found that being targeted by the FARC for extortionate purposes does not constitute persecution "on account of" political opinion. Because the BIA did not expressly adopt that part of the IJ's opinion, however, we do not review whether the FARC's threats against Lopez were made on account of a protected ground. See Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009) ("We review only the BIA's decision, unless the BIA has expressly adopted the IJ's opinion or reasoning." (citation omitted)).

We have repeatedly stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam) (quotation and citation omitted). Here, the record here does not compel the conclusion that Lopez demonstrated past persecution. Lopez testified about kidnapings and murders

6

committed by the FARC, but no attempts were made against him. When he was stopped by the FARC at two random roadblocks, Lopez concealed his identity and was unharmed. Although physical injury is not a necessary prerequisite to establishing persecution, Sanchez Jimenez, 492 F.3d at 1233, repeated threats or menacing phone calls are not sufficiently extreme absent other forms of severe mistreatment. See Sepulveda, 401 F.3d at 1231 ("[T]he menacing telephone calls and threats ... do not rise to the level of past persecution that would compel reversal...."); Silva, 448 F.3d at 1237 (concluding that a written death threat from the FARC did not compel a finding of past persecution). This case is factually different from those where death threats, in combination with other mistreatment, amounted to persecution. See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999 (11th Cir. 2008) (death threats plus assault, kidnaping, and beating); Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257–58 (11th Cir. 2007) (death threats plus an assault with firearms); Ruiz v. Gonzales, 479 F.3d 762, 766 (11th Cir. 2007) (death threats plus kidnaping); see also Li v. Att'y Gen. of the U.S., 400 F.3d 157, 164 (3d Cir. 2005) ("[U]nfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution.").

Lopez argues that record evidence compels a finding that he has a well-founded fear of future persecution. We disagree. Lopez's fear of persecution is not "well-founded" unless it is objectively reasonable. Silva, 448 F.3d at 1236.

Here it is not objectively reasonable because the conduct that forms the basis for Lopez's fears does not amount to persecution.  Moreover, the record supports the BIA's finding that Lopez has failed to demonstrate that the FARC still has an interest in him after his eight-year absence from Columbia.  See Sepulveda, 401 F.3d at 1232 ("[T]he evidence does not indicate [petitioner's] notoriety as an activist would outlast her four-year absence from Colombia.").  The continued existence of human rights violations and violence in Columbia simply does not prove that Lopez would be targeted for persecution upon his return.[3]

Because Lopez has not satisfied the less stringent standard for asylum, we also deny his petition for review of his claim for withholding of removal.  See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006).

**PETITION DENIED.**

---

[3] Lopez argues that the IJ and BIA erred in relying on evidence that his father lived in Columbia unharmed by the FARC even though he too was politically active with the Conservative Party.  We find it unnecessary to address this issue because there is substantial evidence in the record to affirm even if we were to agree with Lopez on this point.  See Al Najjar, 257 F.3d at 1283–84.