[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14871

_____

Agency No. A77-008-468

XUE XIAN JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 22, 2009)

Before MARCUS and PRYOR, Circuit Judges, and SCHLESINGER,* District
Judge.

---

\* Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

MARCUS, Circuit Judge:

Xue Xian Jiang ("Jiang"), a native and citizen of China and mother of two children, petitions for review of the Board of Immigration Appeals' ("BIA") decision denying her motion to reopen removal proceedings to file an asylum application based on changed country conditions, pursuant to 8 C.F.R. § 1003.23(b)(4)(i). Jiang argues that the BIA abused its discretion by failing to adequately consider her undisputed and previously unavailable evidence that Chinese officials in her home village have increased enforcement of China's forced sterilization, one-child policy. We agree with Jiang, and after thorough review, grant her petition for review of the denial of her motion to reopen, and we vacate and remand the cause for further proceedings.

I.

The relevant facts and procedural history are these. Jiang is a native and citizen of Fuzhou, Fujian Province, China, who illegally entered the United States through Miami on May 25, 1999. Jiang was issued a Notice to Appear charging her with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant who was not in possession of a valid, unexpired immigrant visa or unexpired passport. Jiang failed to appear at her September 10, 1999 hearing, and the Immigration Judge ("IJ") ordered Jiang removed in absentia. In January 2000, Jiang filed her first motion to reopen her case, arguing that she did not appear at her September

hearing because her attorney never gave her notice of the appointment. The IJ denied her motion to reopen on February 23, 2000, finding that Jiang had in fact received proper notice.

On July 17, 2002, Jiang married a fellow Chinese native and citizen, Mr. Yu Zhu, and subsequently had two children, both born in New York City: a boy, on December 16, 2002, and a girl, on August 29, 2004.

Jiang filed a second motion to reopen her removal proceedings in May 2006, this time arguing that her earlier counsel was ineffective, and that the untimely filing of her asylum application should be excused because of changed country conditions. Once again, the IJ denied Jiang's second motion to reopen, on June 1, 2006.

On January 9, 2007, Jiang filed her third and final motion to reopen. Jiang asserted that she was fearful she would be persecuted if she were made to return to China because she had married Yu Zhu and given birth to two children in the United States, in violation of China's one-child family policy; that this violation of the one-child family policy could lead to her forced sterilization upon return to China; and that she would otherwise be forced to have an abortion if she became pregnant in the future. Jiang argued that although the one-child policy had been in effect in China for many years, she had recently learned through family and friends in the Fujian Province that forced sterilization and forced abortions were on the

3

rise. Jiang argued that her motion should not be time-barred even though it was filed more than 180 days after the entry of the final administrative order of removal under 8 C.F.R. § 1003.23(b)(4)(i), which provides that:

> [t]he time and numerical limitations [for filing a motion to reopen] shall not apply if the basis of the motion is to apply for asylum under section 208 of the Act or withholding of removal under section 241(b)(3) of the Act or withholding of removal under the Convention Against Torture, and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding.

8 C.F.R. § 1003.23(b)(4)(i).

In support of her motion, Jiang offered previously unavailable evidence that officials in the Fujian Province of China had increased enforcement of the one-child policy by forcibly sterilizing parents with more than one child. Jiang presented her own affidavit, confirming that she had given birth to a son and a daughter in 2002 and 2004 respectively; provided second-hand accounts of the forced sterilization of her sister-in-law and a village neighbor after they gave birth to their second children; and testified that village officials were aware that Jiang had two children, and told her parents that family planning policies would be enforced against her if she returned. Jiang also presented her mother's affidavit,

4

which reported that the Population and Family Planning law of 2002 "has just [been] implemented in our hometown"; reported that punishments for violations were much more severe than they had been in the past; and confirmed the two second-hand accounts of forced sterilization in her own village. Jiang's mother specifically averred that two named individuals in Jiang's hometown, including Jiang's sister-in-law, were forcibly sterilized in 2005 after giving birth to a second child, and that she was sure that Jiang would be forcibly sterilized upon her return to China.

Jiang also offered a policy statement from the Administrative Office of the National Population and Family Planning Committee of China ("AONPFPC"), confirming that China's family planning laws still applied to all Chinese citizens, including even those living in other countries. The policy statement also provided that a couple who violates China's family planning laws by having an illegal birth while living abroad is subject to the Fujian Province population and family planning regulations. She also submitted the 2002 congressional testimony of John Aird, an expert on Chinese family planning policy, confirming the enforcement of the one-child policy on Chinese citizens living abroad upon their return to China.

Jiang also presented the Country Reports of the United States Department of State for 2004 and 2005, detailing human rights abuses in China. Both the 2004 and 2005 Country Reports noted that the 2002 Population and Family Planning

5

Law in China was "the country's first formal law on the subject," and that while enforcement varied from place to place, women with multiple children were "often strongly encouraged" to undergo sterilization: "[i]n the cases of families that already had two children, one parent was often pressured to undergo sterilization, according to reliable reports . . . penalties sometimes left women little practical choice but to undergo abortion or sterilization." Both Country Reports stated that officials in the Fujian Province engaged in "unspecified remedial measures to deal with out-of-plan pregnancies." The 2005 County Report also provided that "[r]eports of forced sterilizations and abortions, in violation of the national law, continued to be documented in rural areas"; and that the most egregious reports of forced sterilization came out of the Shandong province, where at least seven thousand were forcibly sterilized.

Jiang also submitted the 2005 Annual Report from the Congressional-Executive Commission on China, which confirmed that there was "no improvement overall in human rights conditions in China over the past year," and that the population control policy involved coercive fines and "reports of local officials using physical coercion to ensure compliance." Lastly, Jiang submitted evidence establishing that both she and her husband were born in the Fujian Province, and that the population control policies would be enforced against them upon their return.

6

Nonetheless, on April 3, 2007, the IJ denied Jiang's third motion to reopen, holding that Jiang had not established a material change in China's country conditions since Jiang was ordered to be removed in 1999. The IJ noted that although China's family-planning laws had not been codified until 2002, similar coercive policies had been in effect since 1979.

Jiang appealed to the BIA. In support of her brief, Jiang presented the same evidence, and additionally referenced and cited to the U.S. Department of State's web-address for accessing the 2006 County Report, although she did not include a copy of the report. The 2006 Country Report confirmed reports of officials in the Fujian Province forcibly sterilizing women. On August 5, 2008, the BIA dismissed Jiang's appeal. Although it found that Jiang had shown a change in personal circumstances on account of the birth of her two children, it held that the evidence failed to establish changed country conditions. The BIA also determined that the evidence offered failed to establish that conditions related to China's coercive population control policies had changed.

This timely appeal followed.

## II.

We review the denial of a motion to reopen an immigration petition for an abuse of discretion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1301-02 (11th Cir. 2001); Gbaya v. U.S. Att'y Gen., 342 F.3d 1219, 1220 (11th Cir. 2003) ("In this

7

particular area, the BIA's discretion is quite broad.") (quotation marks omitted).

Our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). We review only the BIA's decision, unless the BIA has expressly adopted the IJ's opinion or reasoning. Al Najjar, 257 F.3d at 1284. Here, the BIA adopted the IJ's opinion in part and also added its own analysis; in these circumstances, we review both the BIA's and the IJ's decisions. Id.

Motions to reopen in removal proceedings are particularly disfavored. I.N.S. v. Doherty, 502 U.S. 314, 323 (1992); Abdi, 430 F.3d at 1149.

> At a minimum, there are at least three independent grounds upon which the [BIA] may deny a motion to reopen: 1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion.

Al Najjar, 257 F.3d at 1302.

An alien may file only one motion to reopen removal proceedings, and it must be filed no later than 90 days after the final administrative decision. 8 C.F.R. § 1003.23(b)(1). A motion to reopen a removal order entered in absentia based on "extraordinary circumstances" must be filed within 180 days. See 8 U.S.C. § 1229a(b)(5)(C). Notably, however, these time and numerical limitations for filing a motion to reopen do not apply when (1) an alien files a motion to reopen that

8

seeks asylum, withholding of removal, or relief under the Convention Against Torture; (2) the motion is predicated on changed country conditions; and (3) the changed conditions are material and could not have been discovered at the time of the removal proceedings. 8 C.F.R. § 1003.23(b)(4)(i). An alien who attempts to show that the evidence is material bears a heavy burden and must present evidence that demonstrates that, if the proceedings were opened, the new evidence would likely change the result in the case. Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006).

To qualify for asylum, the applicant must establish that she has a well-founded fear that she will be persecuted if removed to her home country. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1), 1231(b)(3). The Immigration and Nationality Act expressly recognizes forced abortions and sterilizations as one such kind of persecution:

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

9

8 U.S.C. § 1101(a)(42)(B).

Jiang concedes that she filed her motion to reopen late, but nonetheless argues that she has presented evidence of changed country conditions that were not previously available, that the asserted changes were indeed material, and that she has established a prima facie case of eligibility for asylum or withholding of removal. We agree.

In fact, this case is startlingly like the case of Li v. U.S. Att'y Gen., 488 F.3d 1371 (11th Cir. 2007). In Li, a panel of this Court held that a Chinese national had sufficiently established a material change in country conditions and prima facie eligibility for asylum based on very similar facts. Id. at 1375-76. In Li, just as in this case, the petitioner submitted her own affidavit, testifying to her fear of persecution based on second-hand accounts of forced sterilization in her home village, and establishing that she had given birth to two children in the United States since her illegal arrival; and her mother's affidavit, which stated that enforcement of the one-child policy had become more severe, that sterilization was common, and recounting three cases of forced sterilization in her village. Li also produced Country Reports of the United States Department of State, from 2003, 2004, and 2005, establishing that parents who had more than one child were pressured to undergo sterilization, that "unspecified remedial measures" were taken in the Fujian Province against those found to be in violation of the one-child

10

policy, and describing the forced sterilization of thousands Chinese citizens. Additionally, Li presented the 2005 Annual Report of the Congressional-Executive Commission on China, John Aird's 2002 congressional testimony, and two newspaper articles documenting forced abortions and sterilizations in the Shandong Province.

In Li, like in this case, the BIA found that while the petitioner's personal circumstances had changed between 2001 and 2006 due to the birth of her two children, she had not established a change in country conditions. Id. at 1373. On appeal in Li, we sharply disagreed, noting that "[t]he issue before the Board was whether Li's evidence was material and previously unavailable evidence of changed conditions in China," and found that "Li's evidence of a recent campaign of forced sterilization in her home village, evidence consistent with the conclusion of recent government reports, clearly satisfied the criteria for a motion to reopen her removal proceedings." Id. at 1375. We found an abuse of discretion in light of the undisputed evidence Li had presented, and remanded for further proceedings. Id. at 1376.

We can see no discernable difference between the evidence presented in Li and the evidential foundation before us today. Here, the BIA wrongly concluded "that the respondent's claim is principally based on her decision to remain in the United States and give birth to several children . . . [which] constitutes changed

personal circumstances, not 'changed circumstances arising in the country of nationality.'" While changed personal circumstances do not meet the standard for a petition to reopen, see 8 C.F.R. § 1003.23(b)(4)(i), this was not the basis of Jiang's petition. Rather, Jiang argued that the recent increased enforcement of the one-child policy in the Fujian Province, and more particularly, in her hometown, reasonably led her to fear that she too would face persecution in the form of forced sterilization if she were removed to China. We think the BIA badly misconceived Jiang's petition, just as it had misconstrued Li's.

Moreover, both the BIA and the IJ abused their discretion when they concluded that Jiang had not established changed country conditions. While the IJ "acknowledge[d] that China's family planning laws were codified in 2002," once again, he wrongly focused on the fact that "coercive family planning policies have been in effect since 1979," ignoring the crux of Jiang's petition: that China's family planning laws were being more stringently enforced in her hometown and that this led to forced sterilizations.

The BIA's decision again overlooked, or, inexplicably discounted, not only the two affidavits Jiang provided in support of her petition, detailing forced sterilizations in Jiang's own hometown -- neither of which the BIA or IJ found incredible -- but also the 2004 and 2005 Country Reports, which unambiguously corroborated incidents of coerced sterilization, and explicitly recognized that the

12

Fujian Province is known for using "unspecified remedial measures" to deal with those in violation of family planning polices. Indeed, the 2005 Annual Report from the Congressional-Executive Commission on China also confirmed that local officials in some regions use physical force to ensure compliance with the population control policies.

Quite simply, Jiang's evidence established a prima facie case for asylum and withholding of removal, especially in light of Li. The BIA clearly abused its discretion in this case too. We, therefore, GRANT Jiang's petition, VACATE the BIA's order, and direct the BIA to reopen proceedings so that it may consider the merits of her claims for asylum and withholding of removal.

**PETITION GRANTED**.