[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15756

_____

Agency Nos. A088-413-584,
A088-413-585

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 29, 2010
JOHN LEY
CLERK

CLAUDIA ROMERO-OSORIO,
JAIME LUIS LASCARRO-FERNANDEZ,
MARIA CAMILA LASCARRO-ROMERO,
ALEJANDRA LASACARRO-ROMERO,

Petitioners-Appellants,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 29, 2010)

Before DUBINA, Chief Judge, ANDERSON, Circuit Judge, and COAR,* District
Judge.

_____
*Honorable David H. Coar, United States District Judge for the Northern District of Illinois,
sitting by designation.

COAR, District Judge:

Claudia Romero Osorio ("Romero Osorio"), a native and citizen of Colombia, petitions for review of the Board of Immigration Appeals's ("BIA") decision denying her motion to reopen removal proceedings.[1]  Romero Osorio argues that the BIA abused its discretion by failing to grant her motion based on material, previously unavailable evidence that the Revolutionary Armed Forces of Colombia ("FARC") murdered her father and threatened to kill her.  Because Romero Osorio has failed to demonstrate that this evidence was unavailable at the time of her removal hearing, the BIA did not abuse its discretion in denying her motion to reopen.  Accordingly, we deny her petition.

## I.

Claudia Romero Osorio, the lead petitioner in this case, arrived in this country with her husband and two children on October 30, 2006.  On April 26, 2007, Romero Osorio applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"), alleging persecution on the basis of her political opinion.  Her authorization to remain in the United States on a non-

---

[1] Romero Osorio's husband, Jaime Luis Lascarro Fernandez, and her two minor children, Maria Lascarro Romero and Alejandra Lascarro Romero, were derivatives on Romero Osorio's asylum application.  Discussion and resolution of Romero Osorio's claims therefore also applies to her husband and children.

immigrant B2 visa expired three days later, and on June 21, 2007, the Immigration and Naturalization Service issued a notice to appear, charging Romero Osorio with removability under INA § 237(a)(1)(B).

Romero Osorio's father, a member of the Colombian Conservative Party, was running for mayor of the town of Yumbo when he was assassinated on January 17, 2006. Romero Osorio believes that her father was killed by the FARC as a result of his political activity. She claims that the FARC has threatened her as well because of her father's candidacy and her work as his chief assistant. Romero Osorio's application for asylum and withholding of removal is predicated on her fear that, if she returns to Colombia, the FARC will carry out its threats to torture or kill her.

On April 7, 2008, Romero Osorio appeared before an immigration judge ("IJ") on her removability charge and her application for asylum and withholding of removal. At the hearing, Romero Osorio testified about the specific threats she received both before and after her father's death. She also testified about several occasions in which the FARC attempted to fulfill its threats against her. In particular, she testified that she was followed by two unfamiliar men on the day of her father's murder. According to Romero Osorio, the men trailed her to her appointment at the Chumba municipal hospital. When she received a phone call

from her husband, who reported that her father was wounded, the men grabbed her and told her that they intended to kill her father. They also told her, "We're going to take you to the place where your father is." (A.R. 127.) She later learned that her father and two bodyguards had been killed. On the same day, Romero Osorio's husband received a phone call from an individual who identified himself as a member of the FARC and stated that Romero Osorio "had saved her life." (*Id.* at 128.) Romero Osorio interprets this statement to mean that the FARC had intended to murder her as well.

After her father's death, Romero Osorio continued to receive threatening phone calls from individuals who identified themselves as members of the FARC. The callers directed her to abandon her father's campaign and threatened to kill her family. Romero Osorio testified that she did not want to carry on her father's legacy because she feared for her life and the lives of her daughters. She reported that Inis Mursia, the mayoral candidate who replaced her father, was kidnaped and killed by the FARC. According to Romero Osorio, nobody was selected to succeed Mursia because the threats became unmanageable. Nevertheless, the FARC continued to target and kill other members of Romero Osorio's political party. Although Romero Osorio hid at friends' houses, the FARC found her wherever she was and continued its onslaught of death threats. In May 2006, while Romero

4

Osorio was visiting her home during the night, her doorman alerted her that four men in a silver car with tinted windows were asking for her. Romero Osorio looked out her window and saw two men with weapons getting out of the car. Shots were fired, and the police quickly arrived. According to Romero Osorio, they were able to locate the silver car, but not the men.

After seven members of Romero Osorio's political group were killed, she decided to move her family to the United States. The threats continued even after her departure. In particular, the FARC told Romero Osorio's family that they would find her and murder her if she returned to Colombia.

In addition to Romero Osorio's testimony, the IJ considered documentary evidence including declarations from Romero Osorio's relatives and friends, newspaper articles, and the 2006 United States Department of State Country Report for Colombia (the "Country Report"). The Country Report, which garnered particular attention from the IJ, documents Amnesty International's allegation that renegade paramilitary members killed Romero Osorio's father. The Country Report goes on to state that, "[i]n September a court convicted three men of killing Romero, but it was unclear whether they were paramilitary members." (A.R. 205.)

After considering Romero Osorio's testimony and evidence, the IJ denied her claims for relief. The IJ concluded that Romero Osorio did not offer credible

5

testimony that the FARC was responsible for her father's murder because none of the documentary evidence corroborated her testimony. The IJ noted that documents such as Colombian police reports and the declaration submitted by Romero Osorio's cousin indicated that her father was killed by an "unknown person." (*Id.* at 94-95.) Additionally, the IJ was particularly concerned by the Country Report's suggestion that paramilitary members may have killed Romero Osorio's father. The absence of corroborating documents aside, the IJ was troubled by the fact that Romero Osorio's husband, who allegedly fielded some of the FARC's threatening phone calls, was present in court but failed to testify. Finally, the IJ noted that none of the documents supported Romero Osorio's claim that she was slated to take over her father's candidacy.

Romero Osorio appealed the IJ's decision to the BIA, which dismissed her appeal on January 27, 2009. The BIA concluded that the IJ's adverse credibility determination was not "clearly erroneous" because none of the documentary evidence corroborated Romero Osorio's testimony that the threats against her life were being made by the FARC. Several months after the BIA's dismissal of Romero Osorio's appeal, on April 24, 2009, Romero Osorio filed a motion to reopen proceedings. Romero Osorio presented four pieces of evidence in support

6

of her motion. Unlike the evidence submitted at her removal hearing, all four documents explicitly identify her father's killers as members of the FARC.

Specifically, Romero Osorio submitted a certified letter from the Attorney General of Cali, which is dated October 17, 2008. The letter states that the Attorney General's investigation revealed that the individuals responsible for Romero Osorio's father's murder were members of the FARC. The Attorney General apparently reached this conclusion based on investigations carried out from January 17, 2006 "up to this date." (*Id.* at 22.) The letter recommends that Romero Osorio not return to Colombia because of the FARC's continued threats. Romero Osorio also submitted a certified letter from the Municipal Office of the Public Defender of Yumbo. Dated November 21, 2008, this letter states that an investigation showed that "the political class of Yumbo, including [Romero Osorio's father] has been persecuted by the guerilla group of the FARC that use[s], as a distracter, the paramilitary groups that operate in the zone." (*Id.* at 26.) The letter also advises that Romero Osorio "adopt the pertinent measures to safe guard her life and the life of her family." (*Id.*)

Romero Osorio submitted two undated letters in support of her motion to reopen as well. One, an additional letter from the Municipal Office of the Public Defender of Yumbo, states that the FARC has constantly threatened those involved

7

in politics in Yumbo, "as clearly demonstrated with the assassination of [Romero Osorio's father] and the following persecution of [Romero Osorio] by the guerilla group of the FARC." (*Id.* at 29.) The second undated letter, from Ancizar Cardona Sepulveda, Conservative Unity Board Councilman in Yumbo, states that Romero Osorio "was the target of the death threats and persecution in [Yumbo] as retaliation[] presumably by the insurgent group FARC-EP, for having defended her democratic principles and for her promotion of the social programs of our political collectivity." (*Id.* at 32.) Both letters recommend that Romero Osorio not return to Colombia. According to Romero Osorio, neither undated letter was available at the time of her removal hearing.

After considering these four documents, the BIA denied Romero Osorio's motion to reopen. The BIA's decision rested on two grounds. First, the BIA determined that Romero Osorio failed to establish *prima facie* eligibility for the underlying relief sought because "[t]here has been no attempt to reconcile this evidence with information of record before the Immigration Judge that the three men convicted of killing the respondent's father were not members of the FARC and the resulting adverse credibility determination." (*Id.* at 2.) Second, the BIA concluded that Romero Osorio failed to demonstrate that the evidence she presented could not have been obtained and presented at her initial hearing.

8

Romero Osorio now appeals. Because she never appealed the BIA's decision upholding the IJ's adverse credibility determination, only her appeal of the BIA's denial of her motion to reopen is currently before the Court.

## II.

We review the BIA's denial of a motion to reopen for abuse of discretion. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). The BIA abuses its discretion when its decision is arbitrary or capricious. *Id.* Because motions to reopen are disfavored, the movant bears a "heavy burden." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). To succeed on a motion to reopen, the movant must demonstrate that the new evidence she submits "is material and was not available and could not have been discovered or presented" at the removal hearing. 8 C.F.R. § 100.2(c)(1); *see also Verano-Velasco v. U.S. Att'y Gen.*, 456 F.3d 1372, 1376 (11th Cir. 2006).

## III.

After careful review, we find that the BIA did not abuse its discretion by denying Romero Osorio's motion to reopen. Whether or not Romero Osorio's new evidence is material—and we believe that it very well may be—she has failed to demonstrate that this evidence was unavailable at the time of her removal hearing. Most significantly, three men were convicted of Romero Osorio's father's murder

9

in September 2006, well before her April 2008 hearing, and before she even left Colombia. Romero Osorio argues that her new documents were previously unavailable because investigations continued after the September 2006 convictions and only later revealed that her father's killers were members of the FARC. The problem with Romero Osorio's argument is that she fails to provide any specific information as to when these investigations concluded or why she was unable to obtain the results of these investigations prior to April 2008. Although she suggests that investigations into other political killings shed light on the affiliation of her father's killers, she provides no specific information about these investigations either. We also note that none of the documents submitted by Romero Osorio themselves indicate when her father's killers were identified as members of the FARC. Without this information, we are bound to agree with the BIA that Romero Osorio has failed to demonstrate that her new evidence was unavailable at the time of her removal hearing. Because we conclude that the BIA did not abuse its discretion by denying Romero Osorio's motion to reopen, her petition for review is denied.

PETITION DENIED.