[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14746
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2011
JOHN LEY
CLERK

Agency No. A073-552-793


GUO JU HUANG,
GUANG ZHEN HUANG,

Petitioners,


versus


U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 31, 2011)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Guo Ju Huang and Guang Zhen Huang, natives and citizens of China, petition for review of the Board of Immigration Appeals' (BIA) denial of their motion to reopen their case for asylum, withholding of removal and relief under the United Nations Convention Against Torture ("CAT"), pursuant to 8 C.F.R. § 1003.2(c). In 2007, the BIA upheld the order of an Immigration Judge ("IJ") removing the Huangs, a married couple, to China after finding that they did not credibly show that they would be subject to persecution under China's family planning policy. In 2010, the Huangs moved the BIA to reopen their case on the same grounds as alleged in their original application, but supported by more recent evidence. The BIA, finding that the Huangs' evidence did not demonstrate changed country conditions sufficient to excuse the untimeliness of their motion, denied it as time-barred. On appeal, the Huangs argue that: (1) the BIA abused its discretion in denying their motion to reopen by improperly discounting or ignoring evidence that demonstrated that, since their initial proceedings, China has heightened enforcement of its family planning policy in their home province; and (2) the evidence was sufficient to set forth a prima facie case for asylum, withholding of removal, and CAT relief because it tended to show that they had a well-founded fear of forced sterilization if they returned to China. After thorough review, we deny the petition.

We review the denial of a motion to reopen removal proceedings for abuse of discretion. Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). The moving party bears a "heavy burden," and judicial review "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Id. Motions to reopen are especially disfavored in removal proceedings, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006) (quotation omitted). The BIA is not required to discuss every piece of evidence presented, but must only "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006) (quotation omitted).

Ordinarily, an alien who is subject to a final order of removal may file one motion to reopen within 90 days of the date of the final removal order. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Nevertheless, the time limits are inapplicable if the alien can demonstrate "changed country conditions arising in the country of nationality or the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

3

The BIA has the discretion to deny a motion to reopen for, among other things, failure to introduce evidence that was material and previously unavailable. Li v. U.S. Att'y Gen., 488 F.3d 1371, 1374-75 (11th Cir. 2007). "An alien who attempts to show that the evidence is material bears a heavy burden" and must establish "that, if the proceedings were opened, the new evidence would likely change the result in the case." Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256-57 (11th Cir. 2009).

A government's escalated efforts to enforce an existing coercive policy may support a finding of changed country conditions necessary to excuse an untimely motion to reopen. Id. at 1258. In Jiang, upon which the Huangs rely, we rejected the BIA's conclusion that the mere fact that China's family planning policy had been in effect since 1979 undermined their motion, noting that such reasoning "ignored the crux of Jiang's petition: that China's family planning laws were being more stringently enforced in her hometown and that this led to forced sterilizations." Id.

Here, the BIA denied the Huangs' motion to reopen after finding that their new evidence did not reflect materially changed conditions in China. It is undisputed that the Huangs filed their motion in 2010, nearly three years after the BIA's 2007 decision denying their initial application, and as a result, their application was untimely unless they could demonstrate changed country conditions. 8 C.F.R. § 1003.2(c)(3)(ii). Because the Huangs' initial application also relied primarily on an

4

alleged fear that they would be subject to forced abortions or sterilizations under China's family planning policy, they could demonstrate changed country conditions only by proving that China had enhanced enforcement of its family planning policy since they originally sought relief. See Jiang, 568 F.3d at 1258.

As the record shows, the Huangs did not excuse the timeliness of their motion to reopen. While the Huangs's evidence may have supported an inference that the Chinese government's enforcement of its family planning policy resulted in instances of forced sterilizations, they did not show any significant worsening of these tactics since 2007, when the BIA initially denied relief. See id. Unlike the petitioner in Jiang, whose initial application was denied three years before the 2002 codification of the family planning policy, at the time that the Huangs pursued their initial application, there were already indications that China's family policy: (i) was national in scope, but enforced on a provincial or local level; (ii) was usually enforced through oppressive social compensation fees and other administrative measures; (iii) authorized "remedial measures" for out-of-plan pregnancies in the Fujian Province; (iv) was relaxed in rural areas; and (v) resulted in forced abortions and sterilizations -- all of which were characteristics of the family planning policy that the Chinese government "retained" in 2008. Likewise, the materials provided by the Human Rights Commission described not only recent forced abortions, but incidents dating

5

back to 1981. Thus, insofar as the Huangs would be targeted for persecution as the parents of three children, this was consistent with China's long-standing policy to punish all such violators.

Furthermore, despite the Huangs's allegation of a recent "severe crackdown," their evidence did not support a material worsening in China's treatment of individuals with more than one child. While they presented evidence of "campaigns" that apparently resulted in at least one forced abortion, such campaigns were limited in duration, and do not appear different from the temporary campaigns that occurred in 2003. Moreover, there was some indication that conditions actually were improving: whereas in 2005 the central government only nominally protected rights, in 2008 the central government intervened to prevent local abuse, and there were signals that it would eventually abandon the one-child policy altogether. As such, any "severe crackdown" was not a sustained increase in enforcement that altered the country conditions in a way relevant to the Huangs. Cf. Li, 488 F.3d at 1375.

Even a sustained enforcement campaign would not have been material to the Huangs. Taking their relatives' affidavits as true that they were forcibly sterilized, their statements that they currently lived in the Huangs' hometown of Guantou, this was not an indication that they resided there when the sterilization occurred. Additionally, these incidents involved women who gave birth to children in China.

6

By contrast, the Huangs's only suggestion that returnees faced forced sterilization was an affidavit supported by a documentation that U.S. authorities recognized as false, and conflicted with itself in that the affiant stated he was released only after consenting to a sterilization, but an attached release order stated he was released because the detention period expired.  Therefore, the Huangs did not demonstrate that, if their new evidence was available at their initial proceedings, it would have changed the outcome.  See Jiang, 568 F.3d at 1256-57.

Finally, unlike the petitioner in Jiang, the evidence submitted by the Huangs was not undisputed, nor was it overlooked.  Cf. id. at 1257-58.  To the contrary, the BIA specifically identified certain evidence as unworthy of belief.  Considering the deficiencies in these documents, and the fact that they were presented in the context of a disfavored removal proceeding, the BIA's inference was not improper.  Further, a number of documents had to be disregarded as previously available because they related to events that occurred before the BIA denied the Huangs's initial application. Consequently, the BIA did not ignore the voluminous documentary evidence in the record, but arrived at the reasoned conclusion that, because this evidence had to be discounted as unauthenticated or incomplete, the remaining evidence did not show that conditions in China had changed such that either Guo-Ju or Guang Zhen Huang had reason to fear forced sterilization.  See Tan, 446 F.3d at 1374.

7

Having found that the Huangs did not demonstrate changed country conditions necessary to excuse their untimely motion to reopen, we need not consider whether they set forth a prima facie case for the underlying relief.

**PETITION FOR REVIEW DENIED.**