[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15192
Non-Argument Calendar

_____

Agency No. A096-007-564

LONG DA LIN,
a.k.a. Lungdai Lin,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 27, 2012)

Before BARKETT, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Long Da Lin, a citizen of the People's Republic of China, petitions for review of the Board of Immigration Appeals's ("BIA") order denying his motion to reopen his removal proceedings, filed pursuant to 8 C.F.R. § 1003.2(c). An Immigration Judge ("IJ") originally ordered Lin removed in 2003, after finding that he failed to demonstrate eligibility for relief under the Convention against Torture ("CAT"). In 2011, Lin moved the BIA to reopen his proceedings so that he could file an application for asylum, withholding of removal, and CAT relief on the grounds of his fear of persecution in China due to his adherence to Falun Gong. The BIA denied his motion to reopen, concluding that Long had not overcome the 90-day limitations period applicable to motions to reopen. In his petition before this Court, Lin argues that the BIA abused its discretion in denying his motion because he demonstrated materially changed country conditions concerning the treatment of Falun Gong practitioners by the Chinese government. After careful review, we deny the petition.

We review the denial of a motion to reopen a petitioner's removal proceedings for abuse of discretion. Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009). Our review "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Id. The moving party bears a heavy burden, because motions to reopen are disfavored, especially in removal proceedings. Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009).

2

An alien may generally file only one motion to reopen no later than 90 days after the entry of a final administrative order of removal.    8 U.S.C. § 1229a(c)(7)(C)(i).  These time and numerical limitations, however, do not apply:

> when (1) an alien files a motion to reopen that seeks asylum, withholding of removal, or relief under the Convention Against Torture; (2) the motion is predicated on changed country conditions; and (3) the changed conditions are material and could not have been discovered at the time of the removal proceedings.

Jiang, 568 F.3d at 1256; see also 8 U.S.C. § 1229a(c)(7)(C)(ii).  Proving that evidence is material is a "heavy burden," which requires an alien to demonstrate "that, if the proceedings were opened, the new evidence would likely change the result of the case."  Jiang, 568 F.3d at 1256-57.  There are at least three independent grounds upon which the BIA may deny a motion to reopen: an alien's failure to establish a prima facie case for relief; an alien's failure to introduce evidence that was material and previously unavailable; and a determination by the BIA that despite the alien's statutory eligibility for relief, he is not entitled to a favorable exercise of discretion. Id. at 1256.

We have recognized that a government's escalated efforts to enforce an existing coercive policy can support a finding of changed country conditions necessary to grant an untimely motion to reopen.  Id. at 1258.  In Jiang, we granted a petition for review of the BIA's denial of motion to reopen where the motion was

based on evidence that China's enforcement of its family planning law became more stringent since the original removal hearing. Id. However, we observed that Jiang's motion focused on Chinese enforcement efforts as it was likely to affect her, providing evidence of increased forced sterilization in her province and her hometown in particular. See id.

Here, the BIA's denial of the motion to reopen was neither arbitrary nor capricious. As the record shows, the BIA denied Lin's motion to reopen as untimely after finding that his newly-submitted evidence did not demonstrate that Lin was a practitioner of Falun Gong, that conditions in China had not materially changed regarding the treatment of Falun Gong adherents, or that Lin would be at risk for persecution if he were removed to China. It is undisputed that Lin's motion was filed in 2011, more than six years after the BIA's 2004 decision denying him CAT relief. As a result, his motion was time-barred unless he could establish changed country conditions to excuse this defect. 8 C.F.R. § 1003.2(c)(3)(ii).

The record shows that Lin could not excuse this defect. To establish changed country conditions sufficient to warrant reopening, he had to demonstrate that China's enforcement of its prohibition against the practice of Falun Gong had become more stringent since his original removal proceeding. See Jiang, 568 F.3d at 1258. To this end, while Lin may have indicated that the Chinese government suppressed Falun

4

Gong adherents using severe tactics, he did not show a materially significant worsening of these tactics since 2003, when his case was initially decided. For example, the 2001 Human Rights Report, which Lin submitted with his original application for CAT relief, indicated that the Chinese government waged a campaign to eradicate Falun Gong, which it regarded as a cult, detaining adherents in prisons and labor camps and subjecting them to beatings and torture. The 2001 Human Rights Report noted that although a belief in Falun Gong principles was sufficient to warrant such punishment, the harshest punishments were generally reserved for the movement's "core leaders." Similarly, the 2008 Human Rights Report -- which Lin submitted in support of changed country conditions -- indicated that the Chinese government continued its "general crackdown on groups considered to be 'cults,'" including Falun Gong.

Nor did Lin's submitted news articles unambiguously signal a worsening in China's policy towards Falun Gong. Rather, they equally suggested -- like the 2008 Human Rights Report -- that China's "general crackdown" against Falun Gong continued unabated. One article Lin submitted indicated that human rights conditions in Asia generally continued to worsen following the 2008 Olympics, and that China in particular had exhibited "a gap between its promise of a more open China sensitive to human rights" and had displayed a "record during the Olympics of increased

5

religious persecution." However, this article did not specifically discuss any details regarding the Chinese government's post-Olympic treatment of Falun Gong adherents, or otherwise contradict the news articles that reported only a short-term intensification in the government's crackdown efforts during the pre-Olympic months. Furthermore, to the extent that Lin's evidence suggested enhanced efforts surrounding the 2008 Olympics, those efforts were focused around Beijing: there is no evidence to suggest any escalation in Lin's hometown of Chang Le City, or the Fujian Province in general. Cf. Jiang, 568 F.3d at 1258.[1]

As the BIA also determined, Lin failed to show that he was an active practitioner of Falun Gong, that the authorities in China knew about his Falun Gong practice, or that the authorities would have reason to know about his practice when

---

[1] In Liu v. Att'y Gen., 359 F. App'x 993 (11th Cir. 2010), an unpublished decision upon which Lin relies, a Chinese alien moved to reopen on the basis that she had converted to Falun Gong, a group which the Chinese government had treated with increasing severity since she was denied relief six years earlier. Id. at 993-94. Liu submitted evidence that: (1) China "stepped-up enforcement of its prohibition against Falun Gong practitioners," in advance of the 2008 Olympics and continued after; and (2) she adopted Falun Gong, which "demonstrate[d] that the changed country conditions . . . appl[ied] to her." Id. at 994-95. Based on this evidence, we held that the BIA abused its discretion insofar as it determined that she did not establish changed country conditions, because it ignored certain information in the record, including reports that China maintained its escalated efforts against Falun Gong past the 2008 Olympics. Id. at 995. Here, it is true that Lin's articles also suggested that enforcement efforts increased ahead of the 2008 Olympics. However, unlike the petitioner in Liu, Lin did not present any specific evidence that China's escalated aggression towards Falun Gong adherents became a sustained policy that continued after the 2008 Olympics ended. Moreover, the BIA here rendered its decision after considering this evidence of a pre-Olympic crackdown against Falun Gong adherents, unlike in Liu, where we determined that the agency failed to even consider it.

6

he returned to China, such that he could demonstrate that he would be singled out for mistreatment if he returned to China. Although Lin submitted one photograph that he alleged showed his practice of Falun Gong in a public park, the record does not contain any other evidence or details supporting his contention of active membership. Rather, during his initial asylum interview, Lin affirmatively disclaimed any adherence to Falun Gong, and in his affidavit submitted in support of his motion to reopen, he did not state that he practiced Falun Gong or provide any details regarding his participation in the movement. Thus, even if the BIA's conclusion regarding the intensity of the Chinese government's mistreatment of Falun Gong adherents was erroneous, Lin's motion to reopen was nevertheless properly denied because he failed to show why any worsened conditions would be material to his claims for asylum and withholding of removal. See Jiang, 568 F.3d at 1257 (requiring evidence submitted in support of a motion to reopen to be sufficiently material so as to "likely change the result in the case").

Accordingly, the BIA did not abuse its discretion or otherwise act arbitrarily in concluding that Lin did not meet his heavy burden to submit material, previously-unavailable evidence establishing changed country conditions in China that would excuse his time-barred motion to reopen. See Zhang, 572 F.3d at 1319; 8 C.F.R. § 1003.2(c)(3)(ii). We deny his petition for review.

7

**PETITION DENIED.**

8