[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 11-14272; 12-11246
Non-Argument Calendar

_____

Agency No. A097-192-099


FNU MULYADI,

Petitioner,


versus


U.S. ATTORNEY GENERAL,

Respondent.


_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(February 7, 2013)

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

In this consolidated appeal, FNU Mulyadi seeks review of the Board of Immigration Appeals' (BIA's) final order of removal, which affirmed the Immigration Judge's (IJ's) denial of Mulyadi's application for withholding of removal, and the BIA's denial of his motion to reopen.  After careful review, we deny the petitions.

I.

Mulyadi, a native and citizen of Indonesia, was served with a Notice to Appear in 2003 charging him with removability under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted.  Mulyadi conceded removability but filed applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture, alleging that he was persecuted due to his Christian beliefs and would be persecuted again if he returned to Indonesia.[1]  After a hearing in 2009, the IJ denied Mulyadi's applications for relief, and the BIA dismissed his appeal.

In his asylum application, Mulyadi claimed that he and his wife, Visca Imelda, owned a grocery store in Indonesia that they were forced to sell at a confiscatory price.  He stated that he and his wife hosted weekly Christian church gatherings at the store, which attracted anti-Christian harassment.  After the gatherings drew more followers, policemen told Mulyadi and his wife to stop the

---

[1] Mulyadi only appeals the BIA's decision as it relates to withholding of removal.

2

gatherings, threatened to revoke their business license if they refused, and demanded protection money. Then, the store was broken into in August 1999, and the police were informed but did not investigate. Shortly thereafter, Mulyadi received a phone call from someone who claimed that he burglarized the store because Mulyadi was hosting Christian gatherings. Mulyadi's vendors later stopped supplying the store, and he was forced to close it. A Haj, a Muslim leader, offered to buy the shuttered store and threatened to burn it down if Mulyadi refused to sell. Consequently, Mulyadi agreed to sell the store for 150 million rupiah, well below its market value, but the Haj paid only 50 million.

At a hearing before the IJ, Mulyadi testified about the Christian gatherings, the menacing phone call, and the sale of the store. But he did not mention the policemen's harassment and extortion. Imelda testified that the store was open only for two to four months — contradicting Mulyadi's testimony that church gatherings were held in the store for eight months — and closed in either April or June 1999, before the date Mulyadi claimed the store was burglarized. Mulyadi provided no other evidence corroborating his story. The IJ denied Mulyadi's applications for relief, finding Mulyadi's testimony incredible. Mulyadi appealed the IJ's decision, but the BIA dismissed the appeal in August 2011.

Mulyadi subsequently filed a motion to reopen his removal proceedings — claiming that his counsel at the 2009 hearing and his counsel on appeal to the BIA

3

were ineffective — which the BIA denied in February 2012.  Mulyadi timely filed petitions for review of both the BIA's August 2011 and February 2012 orders.  This is his consolidated appeal.

## II.

An alien is entitled to withholding of removal if he establishes that, if returned to his country, his "life or freedom would be threatened . . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion," which may be demonstrated by proving past persecution based on one of those grounds.  8 U.S.C. § 1231(b)(3)(A); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).  An alien's credible testimony alone may be sufficient to establish eligibility for relief, and a denial of relief may be supported solely by an adverse-credibility determination, especially if the alien fails to produce corroborating evidence.  *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304-05 (11th Cir. 2009).  "Considering the totality of the circumstances . . . a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements . . . [and] the consistency of such statements with other evidence of record . . . ."  8 U.S.C. § 1158(b)(1)(B)(iii).

We review factual findings, including credibility determinations, under the substantial-evidence test.  *Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1341 (11th Cir. 2004).  Under this standard, we "must affirm the BIA's decision if it is

4

supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (internal quotation marks omitted). To reverse a BIA factual finding, we must find that "the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

Substantial evidence supports the IJ's and BIA's conclusion that Mulyadi is ineligible for withholding of removal on the basis of an adverse-credibility determination. Mulyadi did not testify to the alleged police harassment and extortion, one of the major forms of harassment he identified in his asylum application. Mulyadi argues that, at the 2009 hearing, he was only asked to testify about the worst incident of persecution he suffered, but the BIA correctly found that Mulyadi had several opportunities to testify to other events. Further, Imelda and Mulyadi's testimony directly contradicted each other about important dates. Contrary to Mulyadi's arguments, Imelda's testimony concerning the dates in question was clear. Mulyadi also argues that it is unclear whether Imelda's testimony about the store closure referred to a temporary rather than a permanent one, but he points to nothing in the record that suggests there was any such temporary closure. Accordingly, the BIA did not err in affirming the IJ's

5

determination that Mulyadi had not shown past persecution and, as a result, that he was not entitled to withholding of removal.

## III.

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006). We will only find an abuse of discretion if the BIA's decision was arbitrary or capricious. *Id.*

"To establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it impinged the fundamental fairness of the hearing." *Ali v. U.S. Att'y Gen.*, 643 F.3d 1324, 1329 (11th Cir. 2011) (internal quotation marks and alterations omitted). And the alien must establish prejudice, which "exists when the performance of counsel is so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Id.* (internal quotation marks omitted).

Mulyadi has failed to demonstrate that the BIA abused its discretion in denying his motion to reopen. Mulyadi makes numerous allegations against his two former attorneys, including: (1) counsel failed to offer corroborating evidence, (2) counsel's examination of Mulyadi and Imelda at the 2009 hearing was deficient, (3) counsel failed to object to or correct the allegedly poor performance of the court-provided interpreter, and (4) the appellate brief filed with the BIA was

6

deficient.  But he identified no evidence or testimony that was not presented at the 2009 hearing or on appeal, no error in the proceedings, and no deficiency in the appellate brief that, had counsel performed differently, may have had a reasonable probability of resulting in a different outcome.  Consequently, the BIA concluded that Mulyadi had not demonstrated prejudice as a result of his counsels' allegedly deficient performance.  And Mulyadi has not shown that to be arbitrary or capricious.  Therefore, the BIA did not abuse its discretion in denying his motion to reopen.

IV.

For the foregoing reasons, we deny both petitions for review.

**PETITIONS DENIED.**