[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14080

_____

Agency No. A097-192-099

FNU MULYADI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 2, 2015)

Before MARCUS and ROSENBAUM, Circuit Judges, and FRIEDMAN,* District
Judge.

PER CURIAM:

Mulyadi,[1] a native and citizen of Indonesia, petitions for review of the Board

---

* Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting
by designation.

[1] Although the petitioner is listed as "FNU (first name unknown) Mulyadi," it appears that

of Immigration Appeals' (BIA) final order denying his second motion to reopen his removal proceedings.  In his petition, Mulyadi argues, among other things, that the BIA erred by giving "limited weight" to evidence that conditions have materially changed in Indonesia with respect to the persecution of Christians of Chinese ethnicity.  After thorough review, we deny the petition.

## I.

The petitioner is a native and citizen of Indonesia who was admitted to the United States as a crewmember in 2001, with authorization to remain for a temporary period (twenty-nine days).  He remained in this country beyond his authorized time.  Mulyadi was served with a Notice to Appear in 2003 charging him with removability under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted.  Mulyadi conceded removability but filed applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT), alleging that he was persecuted on account of his Christian beliefs and ethnicity and would be persecuted again if he returned to Indonesia.[2]  After a hearing in 2009, the Immigration Judge (IJ) denied Mulyadi's applications for relief, finding his testimony incredible.  In particular,

---

"Mulyadi" is the petitioner's complete legal name.

[2] A more detailed account of the procedural history in Mulyadi's case can be found in our previous opinion concerning his consolidated appeal of the BIA's final order of removal and the denial of his first motion to reopen. See Mulyadi v. U.S. Att'y Gen., 506 F. App'x 935 (11th Cir. 2013).

the IJ explained that Mulyadi's claim of persecution depended almost exclusively on an incident in which his grocery store was broken into, the police refused to investigate, and a Muslim leader in the community threatened to burn down the store if Mulyadi did not sell it to him at a very low price. The IJ pointed out various inconsistencies between Mulyadi's personal statement, his testimony at his removal hearing, and his wife's testimony at the same proceeding. Thus, for example, while Mulyadi said in his personal statement that the police came to his store and told him to stop hosting religious meetings, he made no mention of this event at his hearing. Moreover, Mulyadi claimed that his store had been open for eight to ten months, but his wife testified that it had been open only two to four months. Indeed, Mulyadi recalled that the store had been robbed in August 1999 even though, by his wife's account, the store had been sold at least two months earlier. In light of these contradictions, the IJ concluded that neither Mulyadi nor his wife had presented a credible account of persecution. Mulyadi appealed to the BIA, which dismissed the appeal.

In November 2011, Mulyadi filed his first motion to reopen his removal proceedings, arguing that his former counsel's ineffectiveness had resulted in the denial of his various applications for relief. The BIA denied Mulyadi relief. Mulyadi timely appealed the BIA's final order of removal to this Court, as well as the denial of his motion to reopen. In a consolidated appeal, we denied Mulyadi's

3

petitions for review, holding that: (1) substantial evidence supported the IJ's and BIA's conclusion that Mulyadi was ineligible for withholding of removal because of an adverse-credibility determination; and (2) the BIA did not abuse its discretion in denying Mulyadi's first motion to reopen because he had failed to demonstrate prejudice as a result of his counsel's allegedly deficient performance. See Mulyadi, 506 F. App'x at 937-38.

In May 2013, Mulyadi filed the instant motion to reopen his proceedings, based on a worsening of conditions for Christians and Chinese in Indonesia. He described that his parents had been targeted by Muslim groups in 2011 and 2012 and that the police had failed to assist his family. The BIA denied the motion, observing that it was both untimely and number barred. The BIA also found that Mulyadi failed to allege materially changed country conditions. Specifically, the BIA concluded that much of Mulyadi's personal evidence -- including his own statements, an unsworn and unnotarized letter from his parents, photographs of his father, and his father's hospital referral slip -- was entitled to little weight. The BIA noted that only Mulyadi's personal statement corroborated the documents, and that the IJ had previously found him to be incredible. In light of these circumstances, it found the evidence was "entitled to only limited weight." Moreover, the BIA considered government reports and news articles that Mulyadi submitted about the treatment of Christians of Chinese ethnicity or Christians,

4

concluding that they were similar to evidence submitted in support of his original petition for relief, and thus failed to demonstrate a material change in conditions in Indonesia.  Thus, the BIA denied Mulyadi's motion to reopen his removal proceedings.

Mulyadi petitions us now to review that order.

## II.

"We review the denial of a motion to reopen an immigration petition for an abuse of discretion."  Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009).  Our review "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner."  Id.  Undeniably, the moving party bears a heavy burden, Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006) (per curiam), as motions to reopen are disfavored, especially in removal proceedings, INS v. Doherty, 502 U.S. 314, 323 (1992); Jiang, 568 F.3d at 1256.

A party may only file one motion to reopen removal proceedings.  8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2).  That motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."  8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1).  A "motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal," subject to certain exceptions.  8 U.S.C.  § 1229a(c)(7)(C)(i); see 8 C.F.R. § 1003.2(c)(2).  However,

5

the time and number limitations do not apply if the motion to reopen is "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii); see 8 U.S.C. § 1229a(c)(7)(C)(ii).

Here, Mulyadi does not dispute that his second motion to reopen was untimely and numerically barred. Thus, Mulyadi's motion would have to be denied unless he could show by previously unavailable evidence a material change in country conditions. See Jiang, 568 F.3d at 1257.

On this record, we cannot say that the BIA acted arbitrarily or capriciously in denying Mulyadi's second motion to reopen. For starters, the BIA properly concluded that a significant amount of background information Mulyadi attached to his second motion to reopen was substantially similar to the evidence Mulyadi previously had submitted at his merits hearing. Thus, the evidence did not show a material change in country conditions in Indonesia regarding the persecution of Christians of Chinese ancestry. Rather, the reports established that Indonesia is a stable democracy with relatively strong human rights protections, but that in certain regions, "the country's tradition of religious tolerance and pluralism has been strained." For instance, the U.S. Commission on International Religious Freedom's 2012 Report on Indonesia and the 2012 Department of State Country

6

Report on Human Rights in Indonesia both described instances of discrimination and societal abuse based on religious affiliation, though none of the incidents described took place in Mulyadi's home province.

The reports also highlighted government officials' failure to address local laws restricting the freedom of religion, but stated that the six recognized religious groups -- including Protestant Christianity -- often operate openly and with few restrictions. Moreover, Mulyadi failed to establish that Chinese Christians in Indonesia are currently subjected to conditions materially different from those existing at the time of his original petition. Indeed, as the BIA noted in its 2011 opinion denying Mulyadi's first petition for asylum, withholding of removal, and CAT relief, Mulyadi submitted reports during the first proceeding that documented "incidents of harassment and discrimination against Chinese Christians." In support of his second motion to reopen, Mulyadi again submitted evidence of periodic violence and harassment directed at Chinese Christians, but none of this documentary evidence showed a marked increase in discrimination of Christians in Indonesia compared to the time of his merits hearing. Thus, we cannot conclude that the BIA abused its discretion in holding that Mulyadi's second motion to reopen his removal proceedings was both time and number barred.

Mulyadi argues, however, that the BIA did not consider the letter and photographs that he submitted with his petition to reopen, but the record belies this

claim.  In fact, the BIA specifically stated in its opinion that it had reviewed the documents and determined that they were "entitled to only limited weight."  Under the circumstances of this case, the BIA did not abuse its discretion in affording "limited weight" to the proffered documents.  The BIA observed that the letter and photographs were unsworn and from interested parties not subject to cross examination.  See Yen Zheng Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) (per curiam) ("Absent substantiation, self serving affidavits from petitioner and her immediate family are of limited evidentiary value.").  The BIA was permitted to consider these factors, particularly where Mulyadi made no showing that notarization would have been difficult or impossible, cf. Zuh v. Mukasey, 547 F.3d 504, 509 (4th Cir. 2008) (acknowledging that "sworn affidavits may often deserve greater weight than simple letters" but finding that it was "untenable to require" sworn statements from petitioner's family who remained "in a country with conditions that the IJ herself described as 'deplorable'"), and failed to corroborate the letter in any meaningful way, see Yi Xian Chen v. Holder, 705 F.3d 624, 630-31 (7th Cir. 2013) ("[T]he Board concluded that [a letter from the petitioner's wife] was not reliable because it was unsworn and uncorroborated, self-serving, and from an interested party who could not be cross-examined. . . . [B]ecause the statements are uncorroborated and the record suggests that they are self-serving,

8

we cannot say that the Board's decision was irrational.").  Plainly the BIA considered these documents but afforded them little weight.

Mulyadi submitted only a hospital referral slip and his parents' government-issued identification cards to establish the veracity of the letter and photographs.[3] These documents did not confirm the substance of his parents' account.  Moreover, they were official documents that Mulyadi failed to authenticate as required by 8 C.F.R. § 1287.6, which states "an official record or entry therein, when admissible for any purpose [in immigration proceedings], shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized."  We have repeatedly observed that "we cannot depend o[n] [the] veracity of unauthenticated documents," Xiu Ying Wu v. U.S. Att'y Gen., 712 F.3d 486, 497 (11th Cir. 2013) (second alteration in original and quotation omitted); Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1203 n.3 (11th Cir. 2005), and we have unequivocally stated that the BIA is "entitled to discount" these records, Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009) ("The Board was entitled to discount the evidence because the documents had not been authenticated."); Li Shan Chen v. U.S. Att'y Gen., 672 F.3d 961, 964 (11th Cir. 2011) ("Unauthenticated documents lack veracity and are entitled to no deference.").

---

[3] Mulyadi argues that the BIA did not consider these documents because it did not individually analyze them in its opinion.  However, the BIA was not required to analyze each piece of evidence individually, so long as the agency gave reasoned consideration to Mulyadi's second motion to reopen and made adequate findings, which it did.  Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011).

Finally, the BIA noted the IJ's earlier determination that Mulyadi's account of his experience in Indonesia was internally inconsistent and contrary to the story his wife provided -- stating that Mulyadi's testimony was the only evidence in the record suggesting that the letter had been sent by his parents and was accurate. Cf. Hui Pan v. Holder, 737 F.3d 921, 931 (4th Cir. 2013) ("Other than his own discredited testimony. . . [petitioner] did not make any attempt to establish how he acquired the documents or that the documents were genuine."). In light of these circumstances, we cannot say the BIA abused its considerable discretion when it afforded only "limited weight" to the letter and photographs from Mulyadi's parents.

Lastly, Mulyadi claims that the BIA failed to consider country conditions as they relate to his own changed personal circumstances. But he failed to present evidence before the BIA to show that his own circumstances had changed. Rather, he presented documentary evidence from his parents' and sister's lives in Indonesia. The accounts given by his parents and sister related only to their peculiar circumstances and did not demonstrate materially changed country conditions. Cf. Qin Wen Zheng v. Gonzales, 500 F.3d 143, 147 (2d Cir. 2007) ("Although the BIA is required to consider an applicant's countervailing evidence in addition to State Department reports, the BIA does not abuse its discretion in

10

crediting the State Department reports in the face of uncorroborated anecdotal evidence to the contrary." (citations omitted)).

In sum, because Mulyadi did not show materially changed country conditions with respect to the persecution of Christians of Chinese ethnicity in Indonesia since his 2009 removal hearing, the BIA did not abuse its discretion in denying his second motion to reopen.  Accordingly, we deny Mulyadi's petition.

**PETITION DENIED.**