[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11362
Non-Argument Calendar
_____

Agency No. A016-087-611

INGA BARYSHEVA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 7, 2018)

Before TJOFLAT, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Inga Barysheva, proceeding pro se, petitions for review of the Bureau of Immigration Appeals' ("BIA") decision denying her motion to reopen her removal proceedings.  After review, we deny Barysheva's petition.

## I. IMMIGRATION PROCEEDINGS

### A.    Underlying Removal Proceedings

On May 17, 2010, Barysheva, a native and citizen of Ukraine, arrived in the United States as a crewmember on a Carnival Cruise Lines ship with a non-immigrant C1/D visa[1] and was refused permission to land.  On June 8, 2010, the Department of Homeland Security ("DHS") served her with a Form I-863 Notice of Referral to Immigration Judge, placing her in asylum-only proceedings because she expressed fear of returning to Ukraine.  Because she was placed in asylum-only proceedings, the only relief Barysheva could pursue was asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").  See 8 C.F.R. § 208.2(c)(1)(i)(B), (3)(i) (an alien crewmember who has been refused permission to land is not entitled to proceedings under section 240 of the Immigration and Nationality Act ("INA") and may pursue only asylum and withholding of removal); see also Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1366 n.5 (11th Cir. 2005) (an alien in asylum-only proceedings "is limited exclusively to

---

[1] A C1/D visa allows alien crewmembers on commercial sea vessels to travel to the United States to join their vessel and to work on the vessel while it is in a U.S. port.

2

asylum-related relief," and "cannot contest admissibility, removability, or raise claims concerning [her] eligibility for other forms of relief").

In August 2010, Barysheva, pro se, submitted an I-589 application for asylum, withholding of removal, and CAT relief.  Though she indicated that her application was based on her religion and nationality, Barysheva's application primarily focused on her claims that her Italian-citizen husband, Filippo Romano, was abusive and had kidnapped their son, and that she was detained and threatened by Italian police in 2008 when she went to Italy to check on her son.  Similarly, though Barysheva indicated on her application that she feared returning to her home country of Ukraine, the only explanation she provided was also related to her issues with her husband.  Specifically, Barysheva asserted that Ukraine was still a developing democracy where anybody involved in her son's kidnapping could have her "arrested, imprisoned, confined, [or] killed" by bribing Ukrainian government officials.  Barysheva's hearing testimony likewise focused on her issues with her husband, Romano, and her arrest by Italian authorities, and Barysheva admitted that no one in Ukraine had ever bothered her.

In August 2010, following the merits hearing, the IJ issued an oral decision denying Barysheva's asylum application.  The IJ determined that Barysheva's problems were not with anyone in Ukraine, but rather with Italian authorities, and she failed to establish any reasonable possibility that she would be harmed or

3

persecuted if she were returned to Ukraine.  Accordingly, the IJ concluded that Barysheva failed to establish her eligibility for asylum, withholding of removal, or CAT relief.

On appeal, the BIA affirmed the IJ's decision in December 2010.  In January 2011, Barysheva filed a petition for review with this Court, but that petition was later dismissed for want of prosecution.  In March 2011, Barysheva filed a motion to reconsider with the BIA, arguing that her civil rights were violated during the merits hearing and requesting that her case be remanded to the IJ for reconsideration.  The BIA denied Barysheva's motion as untimely, and Barysheva did not petition this Court for review of that denial.

In 2012, Barysheva was removed to Ukraine.  Barysheva remained in Ukraine only briefly before moving to Cyprus, where she lived from 2012 to 2017.

## B.    December 2017 Motion to Reopen

In December 2017, Barysheva, who had recently returned to the United States, filed a pro se motion to reopen her removal proceedings with the BIA.  In her motion, Barysheva stated that she sought reopening to reapply for asylum and withholding of removal based on changed personal circumstances and country conditions.  Barysheva asserted that she had a well-founded fear of returning to Ukraine based on her membership in a particular social group—"single women

4

without family and close relatives." Barysheva also noted that, in 2013 and 2014, armed conflict had broken out in Ukraine.

In addition to pursuing asylum and withholding of removal, Barysheva requested that her removal proceedings be terminated so she could apply for adjustment of status. Barysheva asserted that (1) U.S. Citizenship and Immigration Services approved her I-212 Application to Reapply for Admission and (2) her mother had filed an I-130 Petition for Alien Relative on her behalf.

Barysheva attached a new asylum application to her 2017 motion to reopen. In her new application, Barysheva indicated that she sought relief based on her membership in a particular social group. Barysheva asserted that women in Ukraine are subjected to discrimination, sexual harassment, domestic violence, sex trafficking, and other human rights abuses. Barysheva said women in her family had experienced such mistreatment, explaining that her sister once was attacked by a sex offender, and Barysheva herself turned down a job offer when she was 17 because it was conditioned on the performance of a sexual favor. Barysheva asserted that there is little to no protection against such violence for women in Ukraine, and that she would be particularly vulnerable as a single woman without any close relatives or friends. Barysheva also expressed fear of returning to Ukraine based on the ongoing armed conflict between Ukraine and Russia.

5

## C.    March 2018 BIA Decision

In March 2018, the BIA denied Barysheva's motion to reopen.  The BIA first noted that Barysheva's 2017 motion to reopen was untimely, as it was not filed within 90 days of the BIA's 2010 decision on the merits of her first asylum application.  The BIA further noted that, to the extent Barysheva argued that the IJ and BIA erred in denying her first asylum application, those arguments should have been raised on appeal or in a timely motion to reconsider.

As to Barysheva's changed-country-conditions argument, the BIA explained that Barysheva (1) had not shown that the military conflict in Ukraine was material to her asylum claim based on her membership in a particular social group, and (2) had not shown that Ukraine's problems with violence against women, human trafficking, and other gender-based human rights abuses were actually changed circumstances, rather than a continuation of similar conditions that existed at the time of her initial asylum application.[2]  The BIA further determined that Barysheva had not demonstrated prima facie eligibility for asylum in her new application, as the evidence submitted showed that the armed conflict she feared was concentrated in eastern Ukraine, not in the southwestern city of Odessa where Barysheva was from.  Lastly, the BIA noted that Barysheva's I-130 petition did not provide an

---

[2]During Barysheva's initial asylum proceedings in 2010, DHS submitted the 2009 State Department Country Report for Ukraine, which indicated that discrimination and violence against women and human trafficking were problems in Ukraine.

exception to the time limits for a motion to reopen and, in any event, adjustment of status was not available to Barysheva in her asylum-only proceedings.

Proceeding pro se, Barysheva now petitions for review of the denial of her 2017 motion to reopen.

## II. DISCUSSION

Typically, a motion to reopen immigration proceedings must be filed within 90 days of the date of entry of a final administrative order of removal.[3]  8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).  That 90-day time limit does not apply, however, if the motion seeks asylum or withholding of removal based on changed country conditions in the alien's country of nationality, "if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii); see also Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009).  An alien seeking reopening on that basis bears a heavy burden—she must present material evidence of changed country conditions that, if the proceedings were reopened, likely would alter the result in the case.  Jiang, 568 F.3d at 1256-57.

To establish a claim for asylum, an applicant must show that she was persecuted or has a well-founded fear of future persecution in her home country on

---

[3]We review the BIA's denial of a motion to reopen for an abuse of discretion, and our review is limited to determining whether the BIA's exercise of discretion was arbitrary and capricious.  Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009).

account of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1)(B)(i); Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1315 (11th Cir. 2006). Persecution is an extreme concept that requires more than mere harassment or a few isolated incidents of harassment or intimidation. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). A particular social group must be "defined with particularity" and "socially distinct within the society in question." Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 404 (11th Cir. 2016) (internal quotations omitted). An alien seeking to demonstrate a well-founded fear of future persecution based on membership in a particular social group must show a pattern or practice within her home country of persecuting members of that group. See Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008). An applicant who fails to establish eligibility for asylum necessarily also fails to establish eligibility for withholding of removal or CAT relief. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

Here, the BIA did not abuse its discretion in denying Barysheva's 2017 motion to reopen. Barysheva filed her 2017 motion to reopen well beyond the 90-day time limit for such motions and failed to establish her entitlement to reopening based on changed country conditions. The only changed condition Barysheva pointed to in her motion and accompanying asylum application was the ongoing armed conflict between Ukraine and Russia. The BIA correctly concluded that this

8

conflict is not material to Barysheva's asylum claim.  8 U.S.C. § 1229a(c)(7)(ii);

see also Jiang, 568 F.3d at 1256.  Though the evidence Barysheva presented

indicated that various human rights abuses, including violence against women,

have occurred during the conflict, the evidence also showed that this conflict is

concentrated in the eastern regions of Donetsk and Luhansk, and in the Crimean

peninsula, not in Barysheva's hometown of Odessa in southwestern Ukraine.

Moreover, though the evidence indicated that certain groups of women—

including, among others, older and rural women, women with disabilities, and

lesbian, bisexual, or transgender women—faced a heightened risk of sexual

violence and exploitation, it did not indicate that "single women without close

relatives" were targeted for such abuse.  In addition, as the BIA noted, gender-

based human rights abuses, including sexual violence, human trafficking, and

discrimination, were existing problems in Ukraine at the time of Barysheva's first

asylum application in 2010.  In short, the BIA correctly concluded that Barysheva

failed to demonstrate either materially changed country conditions in Ukraine or

prima facie eligibility for asylum or related forms of relief.  See Jiang, 568 F.3d at

1256-57; Djonda, 514 F.3d at 1174; Forgue, 401 F.3d at 1288 n.4.

The BIA likewise did not err in concluding that Barysheva's approved I-130

petition did not fall within any exception to the 90-day time limit for motions to

reopen, see 8 C.F.R. § 1003.2(c)(3), and that she was not entitled to seek an

9

adjustment of status based on the I-130 petition in her asylum-only proceedings in any event, see 8 C.F.R. § 208.2(c)(1)(i)(B), (3)(i); Nreka, 408 F.3d at 1366 n.5.[4]

In sum, the BIA did not abuse its discretion in denying Barysheva's 2017 motion to reopen.  Accordingly, we deny her petition for review.

**PETITION DENIED.**

---

[4]On appeal, Barysheva raises several arguments regarding her original 2010 asylum proceedings, but our review in this case is limited to the denial of Barysheva's 2017 motion to reopen and does not extend to her original 2010 proceedings.  See Jiang, 568 F.3d at 1256; see also Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005) (this Court lacks jurisdiction to review underlying final removal order where petitioner only filed a petition for review from denial of motion to reopen).

Barysheva also argues that the BIA should have considered her approved I-212 waiver as a changed circumstance warranting reopening.  As with her I-130 petition, however, Barysheva's approved I-212 waiver does not fall within any exception to the 90-day time limit for motions to reopen.  See 8 C.F.R. § 1003.2(c)(3); Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009) (an alien seeking reopening under § 1229a(c)(7)(C)(ii) "cannot circumvent the requirement of changed country conditions by demonstrating only a change in her personal circumstances").