[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10613
Non-Argument Calendar
_____

Agency No. A098-858-821


MEILINA KRISNAWATI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 26, 2020)

Before JILL PRYOR, BRANCH and FAY, Circuit Judges.

PER CURIAM:

Meilina Krisnawati, a native and citizen of Indonesia, petitions for review of the

Board of Immigration Appeals' ("BIA") order denying her motion to reopen her

removal proceedings. Krisnawati argues, in part, that the BIA failed to give reasoned consideration to, or make adequate findings regarding, her argument that reopening was warranted based on evidence of changed country conditions for Christians in Indonesia. Because the BIA made only conclusory statements without addressing any of Krisnawati's new evidence and misstated the contents of the record, we conclude that it failed to give reasoned consideration to the evidence that conditions had changed for Christians in Indonesia. We therefore grant the petition, vacate the BIA's order, and remand for further proceedings.

## I.    BACKGROUND

We divide our discussion of the factual background into two parts. We first discuss Krisnawati's entrance into the United States and the denial of her initial application for asylum and withholding of removal. Second, we discuss her motion to reopen and the BIA's decision denying it.

### A. Entrance to the United States and Application for Asylum

Krisnawati entered the United States in June 2004 as a non-immigrant visitor with authorization to remain in the country until December of that year. After her authorization expired, Krisnawati remained in the United States and in June 2005 filed an application for asylum and withholding of removal, alleging a fear of persecution based on her religious beliefs. Krisnawati admitted that neither she nor her family members had been harmed in the past. But, as a Christian, she feared

persecution from Muslim fundamentalists if she returned to Indonesia and that the Indonesian government would be unable and unwilling to protect her due to her religion. In support of her application, Krisnawati submitted an affidavit that discussed her Christian faith, including her active role in Indonesia's Christian community, and how the anti-Christian movement in Indonesia led her to seek asylum in the United States.

In 2005, the Department of Homeland Security served Krisnawati with a notice to appear ("NTA"), charging that she was removable because she remained in the United States longer than authorized. *See* 8 U.S.C. § 1227(a)(1)(B). After Krisnawati admitted the factual allegations in the NTA, the Immigration Judge ("IJ") found her removable as charged.

The IJ held a hearing in January 2007 to determine whether Krisnawati was eligible for asylum or withholding of removal. In her testimony at the hearing, Krisnawati described how she fled Indonesia because she feared persecution as a result of practicing her religion. In further support of her application for asylum, Krisnawati submitted a 2006 International Religious Freedom Report prepared by the U.S. Department of State. The report detailed that unregistered religious groups in Indonesia were not permitted to establish houses of worship and members of unregistered religious groups had difficulty obtaining identity cards and registering marriages and births. In addition, the report included information

about the government's banning of certain Christian sects.  Krisnawati also submitted news articles, published throughout 2006, that detailed incidents of Muslim fundamentalists attacking Christians and of government interference with Christians practicing their religion.  Her evidence also included the United States Commission on International Religious Freedom's ("USCIRF") 2005 Annual Report, which concluded that violence against Christians was on the rise in Indonesia.

The IJ denied Krisnawati's application for asylum and withholding of removal.  The IJ made an adverse credibility determination, finding that Krisnawati was not credible because her testimony before the IJ conflicted with statements that she had made in an affidavit submitted with her asylum application.  In addition, the IJ determined that Krisnawati failed to establish either past persecution or a well-founded fear of future persecution.  The IJ therefore concluded that she failed to establish eligibility for asylum or withholding of removal.

Krisnawati appealed the IJ's decision to the BIA, which dismissed her appeal in September 2008.  The BIA did not adopt the IJ's adverse credibility determination; rather, it assumed that Krisnawati's testimony was credible but concluded that she failed to show she had suffered past persecution or had a well-founded fear of future persecution.  The BIA accepted that Krisnawati had a

4

subjective fear of harm, but it reasoned that her subjective fear did not differ from that of all other Indonesian Christians, and she failed to establish that all Indonesian Christians had a well-founded fear of persecution.  Given the BIA's conclusion that Krisnawati failed to establish eligibility for asylum, it held that she did not meet the higher burden of proof for withholding of removal.  Krisnawati filed a petition for review in this Court; the Court denied the petition.  *See Krisnawati v. U.S. Att'y Gen.*, 333 Fed. App'x 432 (11th Cir. 2009) (unpublished).

## B. Krisnawati's Motion to Reopen

Nearly 10 years later, in May 2018, Krisnawati filed with the BIA a motion to reopen based, in part, on materially changed conditions for Christians in Indonesia.[1]  Krisnawati sought reopening to present new evidence in support of her asylum and withholding of removal application.  She indicated that she also intended to apply for relief under the United Nations Convention Against Torture ("CAT").

Krisnawati acknowledged that motions to reopen generally have to be filed within 90 days of the final administrative removal order.  But she argued that the 90-day time limit did not apply because she could show changed country

---

[1] Alternatively, Krisnawati requested that her proceedings be reopened by the agency *sua sponte* based on new evidence of abuse by her former spouse; however, we lack jurisdiction to hear an appeal challenging the BIA's refusal to exercise *sua sponte* its authority to reopen proceedings under 8 C.F.R. § 1003.2(a).  *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1292-93 (11th Cir. 2008).

5

conditions, including "new extensive evidence of escalated and widespread persecution, terror, and intimidation of Christians in Indonesia." AR at 38.[2] She explained that anti-Christian sentiment in Indonesia had significantly worsened since her January 2007 hearing, and there were numerous reports of rising anti-Christian violence and mistreatment. Tensions had escalated particularly after a now-jailed Christian political leader's November 2016 campaign speech that was seen as an insult to Islam.

In support of her motion to reopen, Krisnawati attached 14 exhibits regarding the treatment of Christians and other religious minorities in Indonesia. Krisnawati submitted two additional exhibits with her response to the government's opposition to her motion. Her evidence included a 2017 USCIRF report, which described an increase in discrimination against religious minorities in the majority-Muslim country. The report explained that even though the Indonesian government sometimes intervened when violence occurred, violations of freedom of religion continued to rise and increase in intensity and non-Muslims and non-Sunni Muslims endured ongoing difficulties obtaining official permission to build houses of worship.

Krisnawati also submitted news articles that detailed violent attacks against Christians. One article reported that, in May 2018—just before Krisnawati filed

---

[2] "AR." refers to the administrative record.

6

her motion to reopen, a husband and wife used their four children to carry out a string of suicide bombings at three separate Christian churches.  The same article stated that the Islamic State ("ISIS") had targeted Indonesia for member recruitment and that terrorist attacks in 2016 and 2017 were the first to occur in Jakarta since simultaneous attacks on hotels in 2009.  Another article reported a May 2018 church attack and noted that there had been new attacks, or attempted attacks, targeting Christians and the police every day that month.

To illustrate the increase in tensions and violence against Christians and other religious minorities since her 2007 hearing, Krisnawati also submitted an article from Human Rights Watch that described the marked increase in 2016 of acts of religious intolerance against religious minorities, including Christians, in Indonesia; the article reported that the escalation could be traced back to 2005 and both Indonesian officials and non-governmental religious extremists were responsible.  An article in the *Jakarta Post* reported that incidents of violence related to religious intolerance had increased by more than 50 percent between 2014 and 2015.  The article explained that there had also been a sharp increase in the number of violations of religious freedom conducted by state actors, as the number of incidents had increased from a reported 39 violations in 2014 to 101 violations in 2015.

7

Without discussing any of this evidence, the BIA denied Krisnawati's motion to reopen. The BIA concluded that the motion to reopen was untimely and Krisnawati failed to meet the exception for changed country conditions:

> The respondent has not sufficiently described nor does the country information proffered with the motion reflect materially changed circumstances or country conditions for Christians in Indonesia since the Immigration's Judge's January 2007 decision. The respondent does not dispute that discrimination, harassment, and episodes of violence against religious minorities in Indonesia is a long standing and ongoing problem. The respondent does not submit evidence, additional to the 2006 country report already in the record that demonstrates a baseline of conditions existing before January 2007 that are markedly different for members of the Christian community.

AR. at 3-4 (citations omitted).

## II.    STANDARD OF REVIEW

We review for abuse of discretion the BIA's denial of a motion to reopen. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). Review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). We review administrative findings under a highly deferential substantial evidence test, in which we view the evidence "in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004). The BIA's factual findings are considered "conclusive unless a reasonable factfinder would be compelled to conclude to the contrary." *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338,

8

1340 (11th Cir. 2003).  We review *de novo* legal issues, including whether the BIA gave reasoned consideration to a party's arguments or evidence.  *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).

### III.    ANALYSIS

A motion to reopen generally must be filed within 90 days of the date of the final administrative removal order.  *See* 8 U.S.C. § 1229a(c)(7)(C)(i).  But the 90-day time limit for filing a motion to reopen does not apply when (1) the applicant files a motion to reopen seeking asylum, withholding of removal, or relief under the CAT; (2) the motion is predicated on changed country conditions; and (3) the changed conditions are material and could not have been discovered at the time of the removal proceedings.  *Id.* § 1229a(c)(7)(C)(ii); *Jiang*, 568 F.3d at 1256.  An applicant "who attempts to show that the evidence is material bears a heavy burden and must present evidence that demonstrates that, if the proceedings were opened, the new evidence would likely change the result in the case."  *Jiang*, 568 F.3d at 1256-57.

In her motion to reopen, Krisnawati argued that the time limit for filing a motion to reopen did not apply to her motion because the conditions for Christians in Indonesia had changed materially since her initial removal hearing in 2007.[3]

---

[3] The government argues that Krisnawati failed to exhaust her administrative remedies because she did not raise her current argument to the BIA.  We lack jurisdiction to review a claim unless the petitioner has exhausted all administrative remedies with respect to the claim.

Krisnawati argues on appeal that we should vacate the BIA's decision and remand the case because, in denying the motion to reopen, the BIA failed to give reasoned consideration to her argument, and the evidence she presented in support of her argument, that conditions for Christians in Indonesia had significantly worsened since her original application for asylum. We agree with Krisnawati.

To enable review of the BIA's decision denying the motion to reopen, the BIA must give "reasoned consideration" to her arguments and make "adequate findings" to support its denial. *Ali*, 931 F.3d at 1333 (internal quotation marks omitted). A reasoned consideration examination is not a review of the agency's fact findings or legal conclusions; instead, it is a threshold determination as to whether the decision is sufficient to permit review. *Id.* As we have explained, "[t]he Immigration Judge must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Kazemzadeh v. U.S. Atty. Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009) (internal quotation marks omitted).

---

*Amaya–Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). We have explained, however, that this is "not a stringent requirement" and a petitioner's claim will be exhausted if she "previously argued the core issue now on appeal before the BIA." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (internal quotation marks omitted). Here, Krisnawati argued her core issue—that there existed new evidence of materially changed conditions for Christians in Indonesia—in her motion to reopen. Under our precedent, she has exhausted her administrative remedies with respect to this claim.

We have concluded in previous cases that the BIA has failed to give reasoned consideration when its decision "'misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record.'" *Ali*, 931 F.3d at 1334 (quoting *Jeune v. U.S. Atty. Gen.*, 810 F.3d 792, 803 (11th Cir. 2016)).  All three conditions "flow from some irreconcilable tension between the opinion and the record evidence." *Id*.  Although the BIA is required to consider all of the evidence, we do not require that it specifically address every piece of evidence.  *Jeune*, 810 F.3d at 803.  But "it is practically impossible for the [BIA] to write a reviewable decision without discussing 'highly relevant' evidence." *Ali*, 931 F.3d at 1334 (quoting *Min Yong Huang v. Holder*, 774 F.3d 1342, 1349 (11th Cir. 2014)).

Here, the BIA's decision failed to address a single piece of Krisnawati's evidence documenting the escalation of violence and increased persecution— including by government officials—of Christians in Indonesia.  In a conclusory statement, the BIA declared that Krisnawati had shown no material change in country conditions since her removal hearing in early 2007.  The BIA reached this conclusion without discussing any of Krisnawati's evidence, even though the evidence showed a considerable increase in violence against Christians in Indonesia since 2014.  One article that Krisnawati submitted estimated that cases

11

of religious intolerance against minority groups had grown between 2014 and 2015 by more than 50 percent, with Christians being the target in the second highest number of reported cases. This article also noted that the violations of religious freedom conducted *by state actors* had more than doubled during this period. Another article reported that between 2014 and 2015 there was a more than 30 percent increase in religiously motivated violence as a result of opposition to a Chinese Christian leader, and the number was expected to increase again in 2016. The BIA's failure to discuss this highly relevant evidence of changed country conditions makes it impossible for us to review the BIA's decision.

Furthermore, the BIA "'misstate[d] the contents of the record,'" *Ali*, 931 F.3d at 1334 (quoting *Jeune*, 810 F.3d at 803), when it found that Krisnawati did "not submit [new] evidence," A.R. at 4, establishing a baseline of conditions existing before her January 2007 merits hearing that were materially different. Contrary to the BIA's finding, the evidence Krisnawati submitted in support of her motion demonstrated that incidents of religious intolerance and related violence against religious minorities, including Christians, had risen substantially during the period of 2014 through May 2018, when the motion to reopen was filed. And, some of the evidence directly discussed conditions existing in Indonesia before January 2007. For example, one of the articles reported that such incidents began in 2005, when Indonesia's president vowed strict measures against "deviant

12

beliefs" and "turned a blind eye to the worsening of acts of religious intolerance and violence by militant Islamists against religious minorities." AR. at 145-47. The article emphasized that incidents of religious intolerance and related violence had escalated over time and, by 2016, included hundreds of such acts, many of which involved participation by local government entities and police.

Another example is an article from 2018, which discussed that violence and attacks against Christians in Indonesia had increased recently as a result of the weakening of ISIS. The article reported that the losses ISIS experienced in the Middle East caused recruits to shift their focus to committing attacks locally, with Christians being a main target, and that this violence had encouraged other local extremist groups.

Krisnawati's evidence also included an article by the Council on Foreign Relations that included a historical review of Indonesia's religious intolerance. The article noted that "[i]n more recent years, there has been a . . . troubling erosion of tolerance towards minorities in Indonesia, which has manifested in a significant rise in attacks by hard-line Muslim groups on Christian churches." AR. at 174. Another article discussing intolerance against Christians reported that this "intolerance in the country has been increasing for a decade." AR. at 181.

In sum, the BIA's decision does not demonstrate that it gave reasoned consideration to Krisnawati's argument and evidence regarding the changed

13

country conditions for Christians in Indonesia. *Kazemzadeh*, 577 F.3d at 1351.

Although the agency ultimately might not find this evidence sufficient to merit

relief, the evidence was relevant to the issue of whether violence against Christians

had significantly increased since before January 2007, when Krisnawati had her

hearing. The BIA failed to discuss any of Krisnawati's evidence, much less

explain why it found the evidence unpersuasive. And its finding that she did "not

submit evidence" demonstrating a marked change from the conditions existing

before January 2007 is contradicted by the record. AR. at 4. We therefore grant

Krisnawati's petition for review, vacate the BIA's decision, and remand for further

consideration.[4]

**PETITION GRANTED; VACATED AND REMANDED.**

---

[4] Krisnawati raises additional arguments on appeal, including that even if the BIA gave her arguments and evidence reasoned consideration, it abused its discretion by concluding that there had been no material change in country conditions. Because we conclude that the BIA failed to give reasoned consideration such that we cannot review its decision, we do not reach her second argument. *Ali*, 931 F.3d at 1333.

14